UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLSTATE INSURANCE COMPANY, as
successor in interest to NORTHBROOK EXCESS
AND SURPLUS INSURANCE COMPANY f/k/a
NORTHBROOK INSURANCE COMPANY,

Plaintiff,

v.

TRANSATLANTIC REINSURANCE COMPANY,

Defendant.

Case No.:
08 CV 4173

Judge Robert Dow

**ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS**

Defendant Transatlantic Reinsurance Company ("Transatlantic"), by its attorneys,

answers the Complaint of Plaintiff Allstate Insurance Company ("Allstate") and asserts

affirmative defenses and counterclaims as follows:

**ANSWER**

**Complaint Paragraph 1.**  Plaintiff Allstate is an insurance company organized under the laws of
the State of Illinois, with its principal place of business in Northbrook, Illinois.  Allstate is the
successor in interest to Northbrook Excess and Surplus Insurance Company ("NESCO"), which
was formerly Northbrook Insurance Company ("Northbrook"). Pursuant to a certificate of merger
issued by the Illinois Department of Insurance and effective January 1, 1985, NESCO merged with
Allstate, with Allstate assuming all the rights and obligations of NESCO and Northbrook.

**Answer to Paragraph 1.**     Lacks knowledge or information sufficient to

form a belief regarding each and every allegation contained in paragraph 1 of the

Complaint, except admits on information and belief that Allstate is an insurance

company organized under the laws of the State of Illinois, with its principal place of

business in Northbrook, Illinois.

**Complaint Paragraph 2.**   Upon information and belief, Transatlantic Reinsurance Company ("Transatlantic") is a reinsurance company organized under the laws of the State of New York.

      **Answer to Paragraph 2.**     Admits that Transatlantic is a reinsurance

company organized under the laws of the State of New York.

**Complaint Paragraph 3.** This case stems from Transatlantic's failure to discharge obligations owed to Allstate arising from a certain certificate of facultative reinsurance issued to NESCO by Transatlantic.  Allstate is asking the Court to issue a declaratory judgment pursuant to 735 ILCS §2-701, declaring Allstate's rights pursuant to the facultative certificate of reinsurance as set forth in more detail below.

      **Answer to Paragraph 3.**     States that paragraph 3 of the Complaint sets

forth legal conclusions or arguments to which no response is required and otherwise

denies each and every allegation contained in paragraph 3 of the Complaint, except

admits that Transatlantic issued a Certificate of Casualty Facultative Reinsurance

bearing number C 82-67284 (the "1982 Certificate"), otherwise refers to the 1982

Certificate for the terms and conditions stated therein, and denies that Allstate is

entitled to the relief sought.

**Complaint Paragraph 4.** Venue is proper in Cook County pursuant to 735 ILCS §§2-101 and 2-102(a).

      **Answer to Paragraph 4.**     States that paragraph 4 of the Complaint sets

forth legal conclusions or arguments to which no response is required and further

states that because the factual basis therefore is not pled, Transatlantic lacks

knowledge or information sufficient to form a belief regarding each and every

allegation contained in paragraph 4 of the Complaint, except admits that Plaintiff

purported to base pre-removal venue on the statutory sections cited therein.

**Complaint Paragraph 5.** Reinsurance is a type of insurance whereby an insurance company that has insured a risk obtains insurance for itself on that risk provided by another insurance company known as the reinsurer. An insurer which has obtained reinsurance is often referred to as a "cedent" since it "cedes" a portion of risk - and premium - to the reinsurer. In this case, Allstate is the "cedent" and Transatlantic is the "reinsurer."

**Answer to Paragraph 5.**     Denies each and every allegation contained in

paragraph 5 of the Complaint, except that, while Transatlantic admits on information

and belief that the characterizations alleged in paragraph 5 of the Complaint may be

correct in certain circumstances, Transatlantic lacks knowledge or information

sufficient to form a belief as to those allegations as pled as applying uniformly or

generically, and to the extent the allegations are specific to the 1982 Certificate,

denies each such allegation, except admits that Transatlantic is identified therein as

the reinsurer and otherwise refers to the 1982 Certificate for the terms and conditions

stated therein.

**Complaint Paragraph 6.** This case involves a specific type of reinsurance, called facultative reinsurance, which is the reinsurance of a single insurance policy where the terms of reinsurance coverage are negotiated at the time of the underwriting of the insurance policy.

**Answer to Paragraph 6.**     Denies each and every allegation contained in

paragraph 6 of the Complaint, except admits that the 1982 Certificate is a form of

what is commonly referred to as "facultative reinsurance," and denies that the

definition of "facultative reinsurance" alleged is comprehensive, universally

applicable, or applicable to the 1982 Certificate.

**Complaint Paragraph 7.**   On or about April 20, 1982, Transatlantic issued Certificate No. C 82-67284 to NESCO ("the Certificate") which reinsures NESCO's Excess Umbrella Liability Policy No. 63 007 776 ("the Policy").  The Policy insures IC Industries of Chicago, Illinois for the Policy Period of April 1, 1982 through April 1, 1983 and provides limits of $25 million each occurrence, and in the aggregate, excess underlying or self-insured retention.  The Certificate provides reinsurance coverage to NESCO of $4,000,000 part of $15,000,000 excess of $10,000,000.  A copy of the Certificate is attached hereto as Exhibit A.

**Answer to Paragraph 7.**     Denies each and every allegation contained in

paragraph 7 of the Complaint, except admits that Transatlantic issued the 1982

Certificate, and that the face of the 1982 Certificate (not accounting for any changes

by endorsements): bears a date of "4/20/82"; lists the "Ceding Company and

Address" as:

> "NORTHBROOK EXCESS & SURPLUS CO.
> NOVA
>
> Chicago, IL
> ATTN:  ANNUE [sic] LUNSFORD";

lists the "Company Policy Number" as "63 077 776" (the "NESCO Policy"); lists the

"COMPANY RETENTION" as:

> "A) $250,000 part of $2,500,000 excess underlying (B) $1,250,000
> part of $2,500,000 excess $2,500,000 (C) $2,500,000 part of
> $5,000,000 excess $5,000,000 (D) $3,000,000 part of $15,000,000
> excess $10,000,000";

lists the "REINSURANCE ACCEPTED" as:

> "A) nil this layer (B) nil this layer (C) nil this layer (D) $4,000,000
> part of $15,000,000 excess $10,000,000"; and Transatlantic further

states that it lacks knowledge or information sufficient to form a belief regarding each and every allegation contained in paragraph 7 of the Complaint with respect to the current terms of the NESCO Policy, and otherwise refers to the 1982 Certificate and the NESCO Policy for the terms and conditions stated therein.

**Complaint Paragraph 8.** Endorsements 1 through 4 attached to Exhibit A were added to the Certificate at or around the dates identified thereon.  Allstate has no knowledge relating to the issuance of Endorsement 5 except that said Endorsement appears to have been issued on or around May 4, 1983, after expiration of the Policy, but not delivered to Allstate until June 4, 2004.  Allstate denies that Endorsement 5 is effective and forms part of the Certificate reinsuring Allstate but includes it here for the sake of completeness.

**Answer to Paragraph 8.**     Denies each and every allegation contained in paragraph 8 of the Complaint, except admits that Endorsements 1 through 4 were added to the 1982 Certificate at or around the dates identified thereon and notes that Allstate attaches to the Complaint, as part of Exhibit A, a copy of Endorsement No. 15 to the NESCO Policy, which, on information and belief is from Allstate's files, and which contains an annotation dated September 9, 1983 that, on its face, placed Allstate on notice of Endorsement 5.

**Complaint Paragraph 9.**  In May 2001, Allstate entered into a Coverage-in-Place Agreement ("the CIP") with Pneumo Abex Corporation ("Abex").  Abex includes Abex Corporation which was an additional insured under the Policy issued by NESCO to IC Industries.

**Answer to Paragraph 9.**     Lacks knowledge or information sufficient to form a belief regarding each and every allegation contained in paragraph 9 of the Complaint, except admits that it has received a document entitled "Settlement Agreement Between Abex and Allstate" dated May 5, 2001 (the "Settlement Agreement"), denies on information and belief that such agreement was reached in

May 2001, and otherwise refers to the Settlement Agreement (or, if different, to the

"CIP") for the terms and conditions stated therein.

**Complaint Paragraph 10.** The CIP provides a claims handling protocol for the management and payment of third party claims against Abex/IC Industries involving alleged bodily injury from exposure to asbestos and/or products containing asbestos allegedly manufactured, sold, handled or distributed by Abex. The CIP preserves the rights, claims, defenses and coverage positions under various insurance policies, including the Policy reinsured by the Certificate at issue here.

**Answer to Paragraph 10.** States that paragraph 10 of the Complaint sets

forth legal conclusions or arguments to which no response is required, and further

states that Transatlantic lacks knowledge or information sufficient to form a belief

regarding each and every allegation contained in paragraph 10 of the Complaint and

otherwise refers to the Settlement Agreement for the terms and conditions stated

therein.

**Complaint Paragraph 11.** The Certificate contains, *inter alia,* the following loss settlement provisions in Section 3, Claims:

\*\*\*

(c)    Upon receipt by Reinsurer of satisfactory evidence of payment of a loss for which reinsurance is provided hereunder, Reinsurer shall promptly reimburse the Company for its share of the loss and loss expense, subject to paragraph 4 of these General Conditions.

(d)    The term "loss" shall mean only such amounts as are actually paid by the Company in settlement of claims or in satisfaction of awards or judgments. The term "loss" shall not include loss expense.

(e)    Reinsurer's liability for its proportion of a "loss" incurred by the Company shall be determined as follows: (i) if the reinsurance provided hereunder is on an excess of loss basis Reinsurer shall be liable for its excess proportion of a "loss" after application of the Company's retention and any reinsurance excess or pro rata, incuring *[sic]* to the benefit of Reinsurer; (ii) if the reinsurance provided hereunder is on a pro rata basis,

6

Reinsurer shall be liable for its proportion of a "loss", after application of any reinsurance, excess or pro rata, incuring [*sic*] to the benefit of the Reinsurer.

(f)   The term "loss expense" shall mean all expenses incurred in the investigation, adjustment, settlement or litigation of claims, awards, or judgments, including the salaries and expenses of the Company's staff adjusters but excluding the office expenses of the Company and the salaries and expenses of all other employees of the Company.

(g)   Reinsurer's liability for its proportion of "loss expense" incurred by the Company shall be determined as follows: (i) if the reinsurance provided hereunder is on an excess of loss basis, Reinsurer's proportion of the "loss expense" shall be in the same ratio as its share of the "loss" bears to the total amount of such "loss"; (ii) if the reinsurance provided hereunder is on a pro rata basis, Reinsurer's proportion of the "loss expense" shall be in the same ratio as Reinsurer's limit of liability bears to the Company's gross limit of liability under the policy reinsured.

   **Answer to Paragraph 11.**  Denies each and every allegation contained in

paragraph 11 of the Complaint to the extent Allstate purports to do anything other

than quote selected provisions of the 1982 Certificate, except admits the allegation of

paragraph 11 to the extent it correctly quotes selected language of the 1982

Certificate and otherwise refers to the 1982 Certificate for the terms and conditions

stated therein.

**Complaint Paragraph 12.** On or about March 26, 2008, Allstate submitted a statement to Transatlantic, with proofs of loss, setting forth two claims, one in the amount of $360,000.18 (Claim No. 00077760026) and the other in the amount of $313,821.35 (Claim No. 0007760051). Allstate's claim for $313,821.35 represents Transatlantic's proportionate share of the loss paid by Allstate to IC Industries under the Policy which in turn is covered by the Certificate.  A copy of the statement with proofs of loss is attached hereto as Exhibit B.

   **Answer to Paragraph 12.**  Denies each and every allegation contained in

paragraph 12 of the Complaint, except admits that on April 1, 2008, Transatlantic

received a statement with proofs of loss, setting forth two purported claims, one in the

amount of $360,000.18 (Claim No. 00077760026), which was not in respect of the

1982 Certificate, and the other in the amount of $313,821.35 (Claim No.

0007760051), which was purportedly in respect of the 1982 Certificate, and otherwise

refers to the statement with proofs of loss for the matter stated therein.

**Complaint Paragraph 13.** To date, Transatlantic has paid the claim amount of $360,000.18 but has refused to pay Allstate the remaining claim amount of $313,821.35 or any part thereof. Transatlantic has no legitimate or good faith reason to support its non-payment of the claim.

**Answer to Paragraph 13.**    Denies each and every allegation contained in

paragraph 13 of the Complaint, except admits that Transatlantic has paid the claim

amount of $360,000.18, but not under the 1982 Certificate, denies that it has paid any

asbestos claim under the 1982 Certificate, and admits that it has refused to pay the

amount of $313,821.35 because that purported claim is precluded by the terms of the

1982 Certificate.

**Complaint Paragraph 14.** Allstate anticipates that, over time, the CIP identified above will fully exhaust the Policy limits and, therefore, likewise will fully exhaust the reinsurance limits of $4 million. Therefore, Allstate has suffered, and will continue to suffer, loss if Transatlantic continues to avoid honoring its current and future reinsurance obligations owed to Allstate under the Certificate.

**Answer to Paragraph 14.**    Denies each and every allegation contained in

paragraph 14 of the Complaint, except admits that Allstate alleges, and has previously

reported, that Allstate anticipates that its payments will eventually exhaust the entire

NESCO Policy, and that such payments, were they to be covered under

Transatlantic's reinsurance, would exhaust the reinsurance limits.

**Complaint Paragraph 15.** By reason of the allegations set forth above, a real, immediate and justiciable controversy exists between Allstate and Transatlantic and will continue to exist between the parties until such a time as it is resolved by this Court.

        **Answer to Paragraph 15.**    Denies each and every allegation contained in paragraph 15 of the Complaint, except admits that a justiciable controversy exists.

**Complaint Paragraph 16.** Allstate seeks a declaration of the rights and obligations of the parties to the Certificate, and further seeks a determination that Transatlantic (i) pay its proportionate shares of loss and expense as billed and (ii) be required to pay any future loss and expense as said amounts become due and payment is requested by Allstate pursuant to the Certificate.

        **Answer to Paragraph 16.**    Denies each and every allegation contained in paragraph 16 of the Complaint, except admits that Allstate purports to seek a declaration as described therein, and denies that Allstate is entitled to the relief sought.

**Complaint Paragraph 17.** Allstate has fully performed and satisfied all its obligations under the Certificate including all conditions precedent.

        **Answer to Paragraph 17.**    Denies each and every allegation contained in paragraph 17 of the Complaint.

## <u>AFFIRMATIVE DEFENSES</u>

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, without regard to Endorsement 5 to the 1982 Certificate, by virtue of the terms of the 1982 Certificate, including Endorsement 2 to the 1982 Certificate, which plaintiff admits was added to the 1982 Certificate.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred to the extent they result from any failure of the reinsurance broker, who was plaintiff's agent with respect to communications between the parties.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, due to plaintiff's failure to provide timely notice or to otherwise comply with the terms and conditions of the 1982 Certificate.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, by the applicable statute of limitations.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, to the extent the plaintiff failed to determine, in a reasonable, business-like manner, that insurance policies underlying plaintiff's policies and/or the original insured's retained liabilities had been fully and properly exhausted, or otherwise failed to assert available coverage defenses.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, to the extent the amounts claimed from Transatlantic were calculated by including amounts paid in respect of unrelated claims, or by including coverage counsel, declaratory judgment expenses, or other amounts not covered under the 1982 Certificate.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for relief are barred, in whole or in part, by recoupment and/or contractual and common-law offset rights of Transatlantic for amounts plaintiff has improperly collected from Transatlantic.

## COUNTERCLAIMS

As and for a further defense and by way of counterclaim, Transatlantic alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Upon information and belief, plaintiff and counterclaim defendant Allstate is an insurance company organized under the laws of the State of Illinois, with its principal place of business in Northbrook, Illinois.

2.    Defendant and counterclaimant Transatlantic is a reinsurance company organized under the laws of the State of New York.

3.    Upon information and belief, Allstate purports to be the successor to the rights and obligations of Northbrook Excess and Surplus Insurance Company ("NESCO"), including with respect to two Transatlantic reinsurance contracts, for which NESCO (by and through its Chicago-based reinsurance broker) solicited Transatlantic at Transatlantic's Chicago, Illinois office.

4.    The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    This action was commenced by Allstate in the Circuit Court of Cook County, and was removed to this Court pursuant to 28 U.S.C. § 1441.

**FACTUAL ALLEGATIONS COMMON
TO ALL CAUSES OF ACTION**

   **A.     NESCO Solicits Transatlantic To Provide Reinsurance**

   6.     In or about March 1981, NESCO, by and through NOVA Reinsurance
Brokers, Inc., ("NOVA") solicited Transatlantic to reinsure NESCO in respect of a NESCO
"$25MM Umbrella" policy insuring "I.C. Industries."

   7.     In the course of soliciting Transatlantic's reinsurance, NESCO, by and
through NOVA, represented to Transatlantic that the policy underlying NESCO included a
$250,000 self-insured retention, "which is on an occurrence basis only, no aggregate."

   8.     In the course of soliciting and securing Transatlantic's reinsurance,
NESCO, either directly or by and through NOVA, represented that the policy to be reinsured
was issued with NESCO policy number 63 007 776 (the "NESCO Policy"), and would be a
multi-year policy incepting on April 1, 1981.

   **B.     Transatlantic's 1981 Certificate Reinsures
           The First Year Only Of The NESCO Policy**

   9.     Although NESCO, by and through NOVA, represented that the NESCO
Policy would be a multi-year policy, it further stated that it would agree to reinsurance on an
annual basis.

   10.     Transatlantic agreed to provide reinsurance on an annual basis, and the
parties entered into a reinsurance contract covering only the first year of the NESCO Policy,

bearing Transatlantic certificate number C81-66666, effective April 1, 1981 and expiring April 1, 1982 (the "1981 Certificate").

### C. Transatlantic's 1982 Certificate Reinsures The Second Year Of The NESCO Policy

11.     In or about April 1982, NESCO and Transatlantic entered into a second one-year reinsurance agreement covering the second year of the NESCO policy, bearing Transatlantic certificate number C82-67284, effective April 1, 1982 and expiring April 1, 1983 (the "1982 Certificate").

### D. Certain Terms Common To The 1981 Certificate And The 1982 Certificate

12.     Each of the Certificates imposes upon NESCO and, to the extent it purports to claim under the Certificates, imposes upon Allstate, a duty of utmost good faith towards Transatlantic.

13.     NESCO and Allstate, to the extent Allstate purports to claim under the Certificates, have an obligation to handle claims under the NESCO Policy in a reasonable and business-like manner, and any obligation of Transatlantic to indemnify in respect of claims is subject to those claims having been handled in reasonable and business-like manner.

14.     Under each of the Certificates, Transatlantic's obligations extend only to "loss" and "loss expense," which are defined terms under the Certificates and neither of

which permits recovery from Transatlantic for amounts paid in the investigation, settlement or defense of coverage issues or disputes under the NESCO Policy.

15.    To the extent amounts are properly payable under the NESCO Policy and properly includable within "loss" or "loss expense" under the Certificates, NESCO and Allstate, to the extent it claims under the Certificates, are obligated to allocate such amounts to all exposed NESCO policies in a good-faith, reasonable, and consistent manner.

16.    To the extent amounts are properly includable within "loss" or "loss expense", each of the Certificates contain provisions governing the portion of such amounts that can be properly allocated to Transatlantic, and such allocation must also be in a good-faith, reasonable, and consistent manner.

17.    Under each of the Certificates, Transatlantic has indemnity obligations only with respect to loss occurrence payments under the corresponding annual period of the NESCO Policy in excess of $10 million for such loss occurrence, and for each dollar paid under the NESCO Policy for such loss occurrence in excess of $10 million, Transatlantic pays only a percentage share, up to a total payment by Transatlantic of $4 million.

18.    Each of the Certificates requires the reinsured to "notify Reinsurer promptly of any event or development which the Company reasonably believes might result in a claim against Reinsurer."

19.    Each of the Certificates provides for a right of offset, both in respect of that certificate and in respect of "any other reinsurance certificate or agreement heretofore or hereafter entered into by and between" the parties.

20.    Each of the Certificates permits cancellation a specified number of days after notice of cancellation is given.

### E.    Endorsement No. 2 To The 1982 Certificate Precludes Asbestos Claims

21.    As documented in a memorandum dated May 21, 1982, Transatlantic concluded that the insured under the NESCO Policy had possible exposure to asbestos losses due to the nature of the insured's operations.  Transatlantic therefore determined that the 1982 Certificate must be endorsed to exclude the exposure.  Transatlantic further determined that, if such an endorsement were not acceptable to NESCO, the 1982 Certificate would be cancelled and premium refunded.

22.    Endorsement 2 to the 1982 Certificate, which Allstate admits in the Complaint was "added to the Certificate at or around the dates identified thereon," is dated May 14, 1982, states that its effective date is April 1, 1982, and amends the "Type of Insurance" reinsured by Transatlantic to specifically exclude asbestos:



**F.** *After* **Expiration Of The 1982 Certificate,**
**NESCO Signs An Endorsement Potentially**
**Broadening Coverage Under The NESCO Policy**

23.     Upon information and belief, NESCO countersigned two versions of

Endorsement 15 to the NESCO Policy, one on April 18, 1983 and one on May 27, 1983, in

each case after the expiration of the 1982 Certificate.  Upon information and belief, the two

versions provide for different effective dates, but both have the same wording, and

potentially broadened coverage under the NESCO Policy, but did not refer to asbestos or

asbestos claims.

**G.     In Endorsement 5 To The 1982 Certificate, Transatlantic**
**Reiterates That There Is No Asbestos Coverage**

24.     On or about May 4, 1983, within weeks of NESCO first countersigning

Endorsement 15 to the NESCO Policy, Transatlantic issued Endorsement 5 to the 1982

Certificate, reiterating that the 1982 Certificate excluded asbestos coverage:

NOTWITHSTANDING ENDT. #15 ATTACHED TO THE
COMPANY POLICY COVERAGE PROVIDED HEREIN SHALL
EXCLUDE ANY COVERAGE INVOLVING ASBESTOSIS

**H.    Transatlantic Separately Reiterated The Exclusion Of
Asbestos In An Annotation To NESCO's Endorsement 15**

25.    NESCO could not unilaterally alter the scope of coverage provided under the 1982 Certificate.  Absent its consent, Transatlantic had no obligation with respect to NESCO Policy Endorsement 15 to the extent that endorsement was inconsistent with Endorsement 2 or the other terms and conditions of the 1982 Certificate.

26.    The 1982 Certificate specifically states that Transatlantic's liability in accordance with the terms and conditions of the NESCO Policy does not extend "to those terms and/or conditions as may be inconsistent with the terms of this Certificate," which terms included Endorsement 2 to the 1982 Certificate.

27.    Exhibit A to Allstate's Complaint includes a copy of NESCO Policy Endorsement 15.

28.    On information and belief, the copy of NESCO Policy Endorsement 15 included in Exhibit A to the Complaint was obtained from the files of Allstate or NESCO.

29.    The copy of NESCO Policy Endorsement 15 included in Exhibit A to the Complaint includes the following stamped acknowledgment and handwritten annotation by Transatlantic, dated September 9, 1983, referencing both Endorsements 2 and 5 to the 1982 Certificate:

ACKNOWLEDGED
☒ TRANSATLANTIC REINSURANCE COMPANY

CERTIFICATE # C82 67284

TRANSATLANTIC REINSURANCE COMPANY

DATE: 9/9/83 BY: Ronald L Johnston

Notwithstanding the terms of this
endorsement, our reinsurance excludes
asbestos claims per Endorsements 2 and 5.

Ronald L Johnston

I.    **Late And/Or Inadequate Notice
     Concerning The 1982 Certificate**

30.    Based upon Allstate reports regarding asbestos claims against the insured that were sent to "All Interested Reinsurers" and referred to multiple policies issued by NESCO, and that referenced the reinsured NESCO policy in respect of an April 1, 1981 inception date, Transatlantic established a claim file with respect to the 1981 Certificate (i.e., specifically for coverage incepting April 1, 1981 and expiring April 1, 1982) in or about September 2000.

31.    Transatlantic thereafter corresponded with Allstate specifically referencing the term of "4/1/81 - 3/31/82," applicable to the 1981 Certificate.

32.    As a result of late and/or inadequate notice with respect to the 1982 Certificate, Transatlantic did not establish a claim in respect of the 1982 Certificate period until August 13, 2003, a delay of nearly three years as compared to the 1981 Certificate period.

**J.**    **Transatlantic Asserts Late Notice And The**
          **Asbestos Exclusion As A Basis For Denying**
          **Coverage Under The 1982 Certificate**

33.    By letter to Allstate dated August 22, 2003, Transatlantic raised the issue

of the timing of the notice of the "claim as it related to the 1982 policy year," and issued a

full reservation of rights, including "to deny reinsurance coverage based upon the late notice

of this claim."  Transatlantic also asserted the asbestos exclusion as a basis for denying

reinsurance coverage:

> "In addition, we have reviewed the certificate for the 1982 year and note
> that it contains an asbestos exclusion.  It appears that the Northbrook policy
> contained an asbestos exclusion.  Please be advised that [Transatlantic]
> reserves its rights to deny reinsurance coverage based upon this exclusion."

34.    By letter dated December 12, 2003, following a change in the

Transatlantic claims handler, Transatlantic reiterated its reservation of rights, including with

respect to the asbestos exclusion.

**K.**    **For Nearly Five Years, Allstate Fails To**
          **Assert Its Current Position That One Of Two**
          **Asbestos Exclusions Is Ineffective**

35.    At no time prior to filing this action did Allstate, or any one else on behalf

of NESCO, assert to Transatlantic that asbestos claims were not excluded from the 1982

Certificate, or that Endorsement 5 (or Endorsement 2) to the 1982 Certificate was somehow

ineffective.

36.    In a fax message dated June 4, 2004, Allstate itself specifically requested a

copy of Endorsement 5 to the 1982 Certificate, which Transatlantic provided.

37.     Allstate did not thereafter assert that Endorsement 5 to the 1982 Certificate was invalid, did not assert that it had not previously received Endorsement 5, and did not address Endorsement 2 to the 1982 Certificate in any way.

38.     Allstate first billed Transatlantic for asbestos claims under the NESCO Policy in March 2007, and that billing, in the amount of $323,728.66, was only in respect of the 1981 year and the 1981 Certificate.  Transatlantic paid this billing in respect of the 1981 Certificate, and advised Allstate that it maintained its denial with respect to the 1982 Certificate on the basis of the asbestos exclusion.  Allstate did not then contend to Transatlantic that such exclusion had not been received or was not otherwise valid.

39.     Under cover of a letter dated March 26, 2008, and without any response regarding the asbestos exclusion, Allstate invoiced Transatlantic for $360,000.18 under the 1981 Certificate, and $313,821.35 under the 1982 Certificate.

40.     Transatlantic has paid the amount invoiced under the 1981 Certificate, but in an email dated April 16, 2008, Transatlantic advised Allstate that it would not be remitting payment under the 1982 Certificate.  Transatlantic referred Allstate to Transatlantic's prior correspondence in which Transatlantic had referenced the asbestos exclusion in the 1982 Certificate and had stated that Transatlantic would "maintain our denial of coverage under" that certificate.

41.     Allstate commenced this action on or about June 23, 2008, and in its Complaint contended for the first time that it did not contemporaneously receive

Endorsement 5 to the 1982 Certificate and that "Allstate has no knowledge relating to the issuance of Endorsement 5 except that said Endorsement appears to have been issued on or around June 4, 1983."

42.    Allstate breached its duty of utmost good faith to Transatlantic by failing make any effort to resolve this matter short of litigation, or even to advise Transatlantic of Allstate's position.  Upon information and belief, had Allstate done so, this litigation would have been unnecessary, as Transatlantic would have been able to remind Allstate, that although Allstate now claims to have had no knowledge of Endorsement 5 prior to receiving a copy from Transatlantic on June 4, 2003, that copy was provided in response to a request from Allstate specifically for Endorsement 5, thereby demonstrating prior knowledge.

43.    Allstate also apparently failed to review, or chose to ignore, its own files for such correspondence, and made its claim even though the copy of Endorsement 15 to the NESCO Policy attached to Allstate's own Complaint indicates on its face that Allstate was on notice regarding Endorsement 2 and Endorsement 5 by at least 1983.

44.    Transatlantic would also have been able to remind Allstate that, regardless of whether Allstate contemporaneously received Endorsement 5 to the 1982 Certificate, Endorsement 2 separately precludes coverage for the asbestos claims at issue.

**PREJUDICE TO TRANSATLANTIC**

45.    The late and/or inadequate notice with respect to the 1982 Certificate caused a delay of nearly three years, from September 2000 to August 2003, in Transatlantic

establishing a claim file in respect of the period of the 1982 Certificate. This delay

prejudiced Transatlantic, including with respect to its ability to protect its interests under

reinsurance (known as "retrocessional protections") covering Transatlantic's obligations

under the 1982 Certificate.

46.    Upon setting up the claim under the 1982 Certificate in August 2003,

Transatlantic asserted late notice and the asbestos exclusions as a basis to deny coverage

under the 1982 Certificate. As a result of Allstate's failure, over the next five years, to make

any contention that asbestos exclusions were invalid, Transatlantic had no reason to believe

that there was even any disputed liability under the 1982 Certificate, and Transatlantic was

prejudiced with respect to (1) protecting its interests under its retrocessional protections; and

(2) taking steps to gather and preserve evidence regarding the asbestos exclusions.

47.    Transatlantic's investigation concerning the prejudice suffered is still

underway, but on information and belief, it is likely that the financial position of

Transatlantic's reinsurers and/or its ability to collect from them has deteriorated over the

period from September 2000 and/or over the period from August 2003. In addition, on

information and belief, it is likely that certain evidence will be unavailable or more difficult

to obtain.

48.    In addition, as a result of Allstate's failure to attempt to resolve this

dispute in a manner consistent with the duty of utmost good faith, Transatlantic has been

forced to incur costs and expenses with respect to what appears to be an unnecessary

litigation in light of the effect of Endorsement 2, without regard to Endorsement 5, and in

light of Allstate's own documents indicating that its allegations regarding Endorsement 5 are false.

### ALLOCATION AND CLAIM HANDLING

49.    Transatlantic has paid the amounts billed under the 1981 Certificate in reasonable reliance upon the duty of utmost good faith and that Allstate had complied with its duties in handling, allocating and billing the claims.  However, upon information and belief, Allstate overbilled Transatlantic, and Transatlantic has overpaid, under the 1981 Certificate.

50.    Upon information and belief, Allstate has allocated amounts to the 1981 Certificate (which lacks an asbestos exclusion) that should have been allocated to the 1982 Certificate (which contains two asbestos exclusions) or to other NESCO policies not reinsured by Transatlantic.

51.    Upon information and belief, Allstate made payments to the insured in 2001 totaling $7 million, which the settlement agreement that Allstate refers to as the Coverage In Place Agreement (the "Settlement Agreement") characterizes as the "Initial Payments," in respect of "Past Costs" incurred by the insured prior to January 1, 2001.

52.    Upon information and belief, Allstate failed to allocate even a single dollar of the Initial Payments to the 1982 Certificate, even though, upon information and belief, the 1982 period of the NESCO Policy, together with additional NESCO policy periods not reinsured by Transatlantic, were exposed for Past Costs no later than October 2000.

53.    Allstate's most recent invoice and proofs of loss indicate that payments subsequent to the Initial Payment have also been allocated unevenly, at least as between the 1981 and 1982 policy periods, even though the Settlement Agreement indicates that both periods, and at least three other policy periods, were exposed for all subsequent payments, and that payments would be based on the number of exposed periods.

54.    Upon information and belief, Allstate has not complied with provisions in the Certificates governing the allocation of "loss" and "loss expenses."

55.    Allstate's latest invoice and proofs of loss indicate that Allstate calculated the amount billed to Transatlantic under the 1982 Certificate for asbestos claims by including $726,928.40 in respect of an unrelated loss described as "Muffler caused car fire."

56.    Upon information and belief, claims are not payable under the NESCO Policy, and therefore are not recoverable under the Certificates, unless and until underlying coverage, including the insured's self-insured retention ("SIR") has been fully exhausted.

57.    Allstate previously represented to Transatlantic that the $250,000 SIR underlying the NESCO Policy would protect the NESCO Policy from indemnity obligations to the extent the asbestos claims were less than $250,000, because the SIR had no aggregate limit and could only be exhausted on a per-occurrence basis:

> "A review of the Northbrook policies indicates the underlying coverage consists in part of a $750,000 policy in excess an underlying SIR of $250,000 per occurrence, with no aggregate.  Thus it would appear that, in the absence of a duty to defend the policyholder, Northbrook's involvement in asbestos claims that do not exceed $250,000 may be minimal."

58.     As of its prior status report dated February 28, 2008, Allstate was reporting that the insured's average settlement payment per claimant was well below $250,000, at $679.85 or $2,159, depending upon who was responsible for the claim.

59.     Upon information and belief, business-like claim handling would have included the advice of competent coverage counsel in resolving issues concerning exhaustion of the underlying coverage and SIR, allocation to the insured, and other coverage issues, as well as in negotiating or documenting the Settlement Agreement.

60.     Allstate's invoices and proofs of loss do not contain any indication that Allstate's billings exclude amounts paid in connection with resolving coverage issues or with the Settlement Agreement.

61.     Upon information and belief, Allstate has either (a) failed to retain coverage counsel as it should have, or (b) has included expenses for such counsel, which are not covered under the Certificates, in calculating its billings to Transatlantic.

62.     Based on the foregoing, Allstate has breached its duties with respect to claims handling and/or allocation, and Transatlantic has been prejudiced as a result.

### FIRST COUNTERCLAIM
### (Declaratory Judgment - Asbestos Claims Under 1982 Certificate)

63.     The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

64.    As a result of the foregoing, an actual, ripe controversy of a justiciable nature exists between Transatlantic and Allstate concerning Transatlantic's obligations, if any, under the 1982 Certificate to indemnify Allstate for asbestos-related payments.  The controversy is of sufficient immediacy as to justify the issuance of a declaratory judgment and by the terms and provisions of 28 U.S.C.A. § 2201, this court is vested with the power to declare the rights and liabilities of the parties and to give any further relief as may be necessary.

65.    Upon information and belief, Allstate will continue to make payments under the NESCO Policy, and will continue to bill Transatlantic under the 1982 Certificate, until such time as it fully exhausts the reinsurance limits of $4,000,000.

66.    To avoid the necessity of having to repeatedly relitigate Transatlantic's obligations to Allstate under the 1982 Certificate in connection with asbestos-related claims, Transatlantic respectfully requests the entry of a judgment declaring that Transatlantic is not obligated to reimburse Allstate under the 1982 Certificate for any asbestos related payments made by Allstate in connection with the Underlying Policy.

### SECOND COUNTERCLAIM
**(Declaratory Judgment - Allocation Under Both Certificates)**

67.    The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

68.     As a result of the foregoing, an actual, ripe controversy of a justiciable nature exists between Transatlantic and Allstate concerning Allstate's obligations with respect to allocation of payments for purposes of the Certificates.  The controversy is of sufficient immediacy as to justify the issuance of a declaratory judgment and by the terms and provisions of 28 U.S.C.A. § 2201, this court is vested with the power to declare the rights and liabilities of the parties and to give any further relief as may be necessary.

69.     Upon information and belief, Allstate will continue to make payments under the NESCO Policy, and will continue to bill Transatlantic under the Certificates, until such time as it fully exhausts their respective reinsurance limits of $4,000,000.

70.     To avoid the necessity of having to repeatedly relitigate Allstate's allocation obligations under the Certificates, Transatlantic respectfully requests the entry of a judgment declaring that Allstate must allocate in accordance with the terms of the Certificates and in a good-faith, reasonable and consistent manner.

### THIRD COUNTERCLAIM
### (Breach of Contract - Recovery of Amounts Paid)

71.     The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

72.     Based upon the foregoing, Allstate has breached its duty to allocate losses and to invoice Transatlantic in compliance with Allstate's duty of utmost good faith, and/or after compliance with its duty to handle claims in a reasonable and business-like manner,

including Allstate's duty to determine whether the policies underlying the NESCO Policy were properly exhausted.

73.     In reasonable reliance that Allstate acted in accordance with its duty of utmost good faith, Transatlantic has paid Allstate $683,728.83, has been damaged as a result of Allstate's conduct, and is entitled to monetary judgment, in the amount of all such sums that it would not have paid had Allstate fully complied with its duties.

## FOURTH COUNTERCLAIM
### (Breach of Contract - Litigation Costs)

74.     The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

75.     Based upon the foregoing, Allstate has breached its duty of utmost good faith and has thereby caused Transatlantic to incur costs and expenses in connection with this action.  Transatlantic is entitled to a monetary judgment in the amount of such costs and expenses.

**WHEREFORE**, Transatlantic demands judgment against Allstate:

(a) Dismissing the Complaint, together with costs and disbursements;

(b) On its First Counterclaim, declaring that asbestos claims are excluded under the 1982 Certificate, and that Transatlantic has no liability for asbestos claims under the 1982 Certificate;

(c) On its Second Counterclaim, declaring that Allstate must allocate in accordance with the terms of the Certificates and in a good-faith, reasonable and consistent manner;

(d) On its Third Counterclaim, awarding monetary damages in an amount equal to all sums that Transatlantic would not have paid had Allstate fully complied with its duties, together with interest;

(e) On its Fourth Counterclaim, awarding monetary damages in an amount equal to all costs and expenses incurred by Transatlantic as a result of this action, together with interest; and

(f) Granting such other and further relief as this Court may deem proper.

Dated:  August 13, 2008

Respectfully submitted,

TRANSATLANTIC REINSURANCE COMPANY

By:___/s/ Hope G. Nightingale_____

    Its attorney
Hope G. Nightingale (06184864)
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, IL  60606
312-781-6614
312-781-6630 (fax)
Email:nightingale@litchfieldcavo.com

OF COUNSEL:

Carey G. Child, Esq.
Stelio L. Tellis, Esq.
Chadbourne & Parke, LLP
1200 New Hampshire Avenue N.W.
Washington, D.C.  20036
202-974-5600