UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLSTATE INSURANCE COMPANY, as )
successor in interest to NORTHBROOK EXCESS )
AND SURPLUS INSURANCE COMPANY f/k/a )
NORTHBROOK INSURANCE COMPANY, )
)
              Plaintiff, )
)
v. )   Case No. 08 CV 4173
)
TRANSATLANTIC REINSURANCE )   Judge Dow
COMPANY, )
)
             Defendant. )

## ALLSTATE INSURANCE COMPANY'S REPLY TO COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

### PARTIES, JURISDICTION AND VENUE

1. Upon information and belief, plaintiff and counterclaim defendant Allstate is an insurance company organized under the laws of the State of Illinois, with its principal place of business in Northbrook, Illinois.

**REPLY:** Allstate admits the allegations of Paragraph 1.

2. Defendant and counterclaimant Transatlantic is a reinsurance company organized under the laws of the State of New York.

**REPLY:** Allstate admits the allegations of Paragraph 2.

3. Upon information and belief, Allstate purports to be the successor to the rights and obligations of Northbrook Excess and Surplus Insurance Company ("NESCO"), including with respect to two Transatlantic reinsurance contracts, for which NESCO (by and through its Chicago-based reinsurance broker) solicited Transatlantic at Transatlantic's Chicago, Illinois office.

**REPLY:** Allstate admits that it is the successor in interest to Northbrook Excess and Surplus Insurance Company ("NESCO") including with respect to two Transatlantic Re insurance contracts.

Allstate denies the remaining allegations of Paragraph 3.

4. The Court has subject-matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**REPLY:** Allstate admits the allegations of Paragraph 4.

5. This action was commenced by Allstate in the Circuit Court of Cook County, and was removed to this Court pursuant to 28 U.S.C. § 1441.

**REPLY:** Allstate admits the allegations of Paragraph 5.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.  NESCO Solicits Transatlantic To Provide Reinsurance

6. In or about March 1981, NESCO, by and through NOVA Reinsurance Brokers, Inc. ("NOVA") solicited Transatlantic to reinsure NESCO in respect of a NESCO "$25MM Umbrella" policy insuring "I.C. Industries."

**REPLY:** Allstate denies the allegations of Paragraph 6 but admits that NOVA solicited various reinsurers to obtain reinsurance coverage for a policy of insurance NESCO issued to I C Industries.

7. In the course of soliciting Transatlantic's reinsurance, NESCO, by and through NOVA, represented to Transatlantic that the policy underlying NESCO included a $250,000 self-insured retention, "which is on an occurrence basis only, no aggregate."

**REPLY:** Allstate denies that it solicited Transatlantic Re and states further that there were several policies underlying the 1981 NESCO policy and therefore Allstate lacks knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 7.

8. In the course of soliciting Transatlantic's reinsurance, NESCO, either directly or by and through NOVA, represented that the policy to be reinsured was issued with NESCO policy number 63 007 776 (the "NESCO Policy"), and would be a multi-year policy incepting on April 1, 1981.

**REPLY:** Allstate denies that it solicited Transatlantic Re but admits that the NESCO policy was a multi-year policy incepting on April 1, 1981.

### B.  Transatlantic's 1981 Certificate Reinsures The First Year Only Of The NESCO Policy

9. Although NESCO, by and through NOVA, represented that the NESCO Policy would be a multi-year policy, it further stated that it would agree to reinsurance on an annual basis.

**REPLY:** Allstate admits that it agreed to reinsurance on an annual basis but denies the remaining allegations of Paragraph 9.

2

10. Transatlantic agreed to provide reinsurance on an annual basis, and the parties entered into a reinsurance contract covering only the first year of the NESCO Policy, bearing Transatlantic certificate number C81-66666, effective April 1, 1981 and expiring April 1, 1982 (the "1981 Certificate").

**REPLY**: Allstate admits that Transatlantic Certificate No C81-66666 was effective April 1, 1981 and covered only the first year of the NESCO policy but denies the remaining allegations of Paragraph 10

### C. Transatlantic's 1982 Certificate Reinsures The Second Year Of The NESCO Policy

11. In or about April 1982, NESCO and Transatlantic entered into a second one-year reinsurance agreement covering the second year of the NESCO policy, bearing Transatlantic certificate number C82-67284, effective April 1, 1982 and expiring April 1, 1983 (the "1982 Certificate").

**REPLY**: Allstate admits that Transatlantic Certificate No C82-67284 was effective April 1, 1982 and expired April 1, 1983 and covered the second year of the NESCO policy period but denies the remaining allegations of Paragraph 11.

### D. Certain Terms Common To The 1981 Certificate And The 1982 Certificate

12. Each of the Certificates imposes upon NESCO and, to the extent it purports to claim under the Certificates, imposes upon Allstate, a duty of utmost good faith towards Transatlantic.

**REPLY**: Paragraph 12 sets forth legal conclusions or arguments to which no reply is required, but to the extent said duty exists, it is a mutual duty owed by the reinsurer to its reinsured as well

13. NESCO and Allstate, to the extent Allstate purports to claim under the Certificates, have an obligation to handle claims under the NESCO Policy in a reasonable and business-like manner, and any obligation of Transatlantic to indemnify in respect of claims is subject to those claims having been handled in reasonable and business-like manner.

**REPLY**: Paragraph 13 sets forth legal conclusions or arguments to which no reply is required.

14. Under each of the Certificates, Transatlantic's obligations extend only to "loss" and "loss expense," which are defined terms under the Certificates and neither of which permits recovery from Transatlantic for amounts paid in the investigation, settlement or defense of coverage issues or disputes under the NESCO Policy

3

**REPLY:** Paragraph 14 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

15. To the extent amounts are properly payable under the NESCO Policy and properly includable within "loss" or "loss expense" under the Certificates, NESCO and Allstate, to the extent it claims under the Certificates, are obligated to allocate such amounts to all exposed NESCO policies in a good-faith, reasonable, and consistent manner.

**REPLY:** Paragraph 15 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

16. To the extent amounts are properly includable within "loss" or "loss expense," each of the Certificates contain provisions governing the portion of such amounts that can be properly allocated to Transatlantic, and such allocation must also be in a good-faith, reasonable, and consistent manner.

**REPLY:** Paragraph 16 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

17. Under each of the Certificates, Transatlantic has indemnity obligations only with respect to loss occurrence payments under the corresponding annual period of the NESCO Policy in excess of $10 million for such loss occurrence, and for each dollar paid under the NESCO Policy for such loss occurrence in excess of $10 million, Transatlantic pays only a percentage share, up to a total payment by Transatlantic of $4 million.

**REPLY:** Paragraph 17 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

18. Each of the Certificates requires the reinsured to "notify Reinsurer promptly of any event or development which the Company reasonably believes might result in a claim against Reinsurer."

**REPLY:** Paragraph 18 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

4

19.     Each of the Certificates provides for a right of offset, both in respect of that certificate and in respect of "any other reinsurance certificate or agreement heretofore or hereafter entered into by and between" the parties.

**REPLY:** Paragraph 20 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

20.     Each of the Certificates permits cancellation a specified number of days after notice of cancellation is given.

**REPLY:** Paragraph 20 sets forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the Certificates at issue for the terms and conditions stated therein.

### E.     Endorsement No. 2 To The 1982 Certificate Precludes Asbestos Claims

21     As documented in a memorandum dated May 21, 1982, Transatlantic concluded that the insured under the NESCO Policy had possible exposure to asbestos losses due to the nature of the insured's operations. Transatlantic therefore determined that the 1982 Certificate must be endorsed to exclude the exposure. Transatlantic further determined that, if such an endorsement were not acceptable to NESCO, the 1982 Certificate would be cancelled and premium refunded.

**REPLY:** Allstate lacks knowledge or information sufficient to form a belief regarding each and every allegation of Paragraph 21 but states that the basis of acceptance for the 1982 Certificate was as a contributing excess reinsurer with concurrent coverage. Thus the 1982 Certificate bore the same exposure to risk, such as asbestos, as did the NESCO Policy.

22.     Endorsement 2 of the 1982 Certificate, which Allstate admits in the Complaint was "added to the Certificate at or around the dates identified thereon," is dated May 14, 1982, states that its effective date is April 1, 1982, and amends the "Type of Insurance" reinsured by Transatlantic to specifically exclude asbestos:

> Item 1    Type of Insurance —
> Excess Umbrella Liability
> Excluding Asbestos

5

**REPLY**: Allstate admits that Endorsement 2 to the 1982 Certificate was added to the Certificate at or around the date identified thereon but denies each and every other allegation and legal conclusion stated in Paragraph 22.

### F. *After* Expiration Of The 1982 Certificate, NESCO Signs An Endorsement Potentially Broadening Coverage Under The NESCO Policy

23. Upon information and belief, NESCO countersigned two versions of Endorsement 15 to the NESCO Policy, one on April 18, 1983 and one on May 27, 1983, in each case after the expiration of the 1982 Certificate. Upon information and belief, the two versions provide for different effective dates, but both have the same wording, and potentially broadened coverage under the NESCO Policy, but did not refer to asbestos or asbestos claims.

**REPLY**: Allstate admits the existence of Endorsement 15 to the NESCO Policy. Allstate states that the balance of the allegations of Paragraph 23 set forth legal conclusions or arguments to which no reply is required and otherwise refers to Endorsement 15 to the NESCO Policy in its entirety for the terms and conditions stated therein.

### G. In Endorsement 5 To The 1982 Certificate, Transatlantic Reiterates That There Is No Asbestos Coverage

24. On or about May 4, 1983, within weeks of NESCO first countersigning Endorsement 15 to the NESCO Policy, Transatlantic issued Endorsement 5 to the 1982 Certificate, reiterating that the 1982 Certificate excluded asbestos coverage:

> Notwithstanding ENDT. #15 ATTACHED TO THE
> Company Policy Coverages Provided Hereunder Shall
> Exclude Any Coverage Involving Asbestosis.

**REPLY**: Allstate lacks knowledge or information sufficient to form a belief regarding the allegations of Paragraph 24 but specifically denies the legal efficacy of Endorsement 5 and that it excluded, or purports to exclude, coverage for asbestos losses. The balance of Paragraph 24 sets forth legal conclusions or arguments to which no reply is required.

### H. Transatlantic Separately Reiterated The Exclusion Of Asbestos In An Annotation To NESCO's Endorsement 15

25. NESCO could not unilaterally alter the scope of coverage provided under the 1982 Certificate. Absent its consent, Transatlantic had no obligation with respect to NESCO Policy

6

Endorsement 15 to the extent that endorsement was inconsistent with Endorsement 2 or the other terms and conditions of the 1982 Certificate.

**REPLY:** The allegations of Paragraph 25 set forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the terms and conditions of the NESCO Policy and Endorsement 15 thereto, along with the terms and conditions of the 1982 Certificate and its Endorsements.

26. The 1982 Certificate specifically states that Transatlantic's liability in accordance with the terms and conditions of the NESCO Policy does not extend "to those terms and/or conditions as may be inconsistent with the terms of this Certificate," which terms included Endorsement 2 to the 1982 Certificate.

**REPLY:** The allegations of Paragraph 26 set forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to the terms and conditions of Endorsement 2 to the 1982 Certificate and the NESCO Policy.

27. Exhibit A to Allstate's Complaint includes a copy of NESCO Policy Endorsement 15.

**REPLY:** Allstate admits the allegations of Paragraph 27.

28. On information and belief, the copy of NESCO Policy Endorsement 15 included in Exhibit A to the Complaint was obtained from the files of Allstate or NESCO.

**REPLY:** Allstate admits that Endorsement 15 included in Exhibit A to the Complaint was obtained from the files of Allstate or NESCO and that its exists in other files as well including those maintained by Transatlantic Re.

29. The copy of NESCO Policy Endorsement 15 included in Exhibit A to the Complaint includes the following stamped acknowledgment and handwritten annotation by Transatlantic, dated September 9, 1983, referencing both Endorsements 2 and 5 to the 1982 Certificate:

```
ACKNOWLEDGED
[X] TRANSATLANTIC REINSURANCE COMPANY
CERTIFICATE # C82 67284
TRANSATLANTIC REINSURANCE COMPANY
DATE: 9/9/83 BY: /Ronald A. Johnston/

Notwithstanding the terms of this
endorsement, our reinsurance excludes
asbestos claims per Endorsements 2 and 5.
                          /Ronald A. Johnston/
```

7

**REPLY**: Allstate states that the allegations of Paragraph 29 set forth legal conclusions or arguments to which no reply is required. Allstate otherwise refers to NESCO Policy Endorsement 15 included in Exhibit A to the Complaint for the terms and conditions stated therein.

### I.  Late And/Or Inadequate Notice Concerning The 1982 Certificate

30. Based upon Allstate reports regarding asbestos claims against the insured that were sent to "All Interested Reinsurers" and referred to multiple policies issued by NESCO, and that referenced the reinsured NESCO policy in respect of an April 1, 1981 inception date, Transatlantic established a claim file with respect to the 1981 Certificate (i.e., specifically for coverage incepting April 1, 1981 and expiring April 1, 1982) in or about September 2000.

**REPLY**: Allstate lacks knowledge or information sufficient to form a belief regarding the allegations of Paragraph 30.

31. Transatlantic thereafter corresponded with Allstate specifically referencing the term of "4/1/81 – 3/31/82," applicable to the 1981 Certificate.

**REPLY**: Allstate lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 31 and otherwise refers to the terms of the various communications issued by and between Transatlantic and Allstate applicable to both the 1981 and 1982 Certificates.

32. As a result of late and/or inadequate notice with respect to the 1982 Certificate, Transatlantic did not establish a claim in respect of the 1982 Certificate period until August 13, 2003, a delay of nearly three years as compared to the 1981 Certificate period.

**REPLY**: Allstate lacks knowledge or information sufficient to form a belief regarding what Transatlantic did with respect to establishing a claim in respect of the 1982 Certificate, and denies each and every allegation of Paragraph 32.

### J.  Transatlantic Asserts Late Notice And The Asbestos Exclusion As A Basis For Denying Coverage Under The 1982 Certificate

33. By letter to Allstate dated August 22, 2003, Transatlantic raised the issue of the timing of the notice of the "claim as it related to the 1982 policy year," and issued a full reservation of rights, including "to deny reinsurance coverage based upon the late notice of this claim." Transatlantic also asserted the asbestos exclusion as a basis for denying reinsurance coverage:

> "In addition, we have reviewed the certificate for the 1982 year and note that it contains an asbestos exclusion. It appears that the Northbrook policy contained an asbestos exclusion. Please be advised that [Transatlantic] reserves its rights to deny reinsurance coverage based upon this exclusion."

**REPLY:** Allstate admits that it received a letter from Transatlantic Re dated August 22, 2003 but states that the remaining allegations of Paragraph 33 set forth legal conclusions or arguments to which no reply is required and otherwise refers to the letter itself for the terms and conditions stated therein.

34. By letter dated December 12, 2003, following a change in the Transatlantic claims handler, Transatlantic reiterated its reservation of rights, including with respect to the asbestos exclusion.

**REPLY:** Allstate denies it received a letter dated December 12, 2003 from Transatlantic Re and lacks knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 34

### K. For Nearly Five Years, Allstate Fails To Assert Its Current Position That One Of Two Asbestos Exclusions Is Ineffective

35. At no time prior to filing this action did Allstate, or any one else on behalf of NESCO, assert to Transatlantic that asbestos claims were not excluded from the 1982 Certificate, or that Endorsement 5 (or Endorsement 2) to the 1982 Certificate was somehow ineffective.

**REPLY:** Allstate denies the allegations of Paragraph 35.

36 In a fax message dated June 4, 2004, Allstate itself specifically requested a copy of Endorsement 5 to the 1982 Certificate, which Transatlantic provided.

**REPLY:** Allstate admits the allegations of Paragraph 36.

37. Allstate did not thereafter assert that Endorsement 5 to the 1982 Certificate was invalid, did not assert that it had not previously received Endorsement 5, and did not address Endorsement 2 to the 1982 Certificate in any way.

**REPLY:** Allstate denies the allegations of Paragraph 37 except to the extent that it sets forth legal conclusions or arguments to which no reply is required

38. Allstate first billed Transatlantic for asbestos claims under the NESCO Policy in March 2007, and that billing, in the amount of $323,728 66, was only in respect of the 1981 year and the 1981 Certificate Transatlantic paid this billing in respect of the 1981 Certificate, and advised Allstate that it maintained its denial with respect to the 1982 Certificate on the basis of the asbestos exclusion Allstate did not then contend to Transatlantic that such exclusion had not been received or was not otherwise valid

9

**REPLY:** Allstate admits that its March 2007 billing in the amount of $323,728.66 was only in respect of the 1981 year and that Transatlantic paid same. Allstate otherwise refers to the communications between the parties for further terms and conditions. Further replying, the 1982 Certificate was not at issue at that time. Allstate had submitted no billings thereunder and thus was not obligated to comment on Transatlantic's contentions with respect to the terms and conditions of that Certificate

39   Under cover of a letter dated March 26, 2008, and without any response regarding the asbestos exclusion, Allstate invoiced Transatlantic for $360,000.18 under the 1981 Certificate, and $313,821.35 under the 1982 Certificate.

**REPLY:** Allstate admits that it billed Transatlantic under the 1981 and 1982 Certificates in March 2008 but denies that either Certificate contains an "asbestos exclusion."

40.   Transatlantic has paid the amount invoiced under the 1981 Certificate, but in an email dated April 16, 2008, Transatlantic advised Allstate that it would not be remitting payment under the 1982 Certificate. Transatlantic referred Allstate to Transatlantic's prior correspondence in which Transatlantic had referenced the asbestos exclusion in the 1982 Certificate and had stated that Transatlantic would "maintain our denial of coverage under" that certificate

**REPLY:** Allstate admits that Transatlantic has paid amounts invoiced under the 1981 Certificate and otherwise refers to the communications by and between the parties for the specific terms and conditions set forth therein. Allstate denies that either the 1981 or the 1982 Certificates contain an "asbestos exclusion."

41.   Allstate commenced this action on or about June 23, 2008, and in its Complaint contended for the first time that it did not contemporaneously receive Endorsement 5 to the 1982 Certificate and that "Allstate has no knowledge relating to the issuance of Endorsement 5 except that said Endorsement appears to have been issued on or around June 4, 1983."

**REPLY:** Allstate admits that it commenced this action on or about June 23, 2008 but denies each and every other allegation of Paragraph 41.

42.   Allstate breached its duty of utmost good faith to Transatlantic by failing to make any effort to resolve this matter short of litigation, or even to advise Transatlantic of Allstate's position. Upon information and belief, had Allstate done so, this litigation would have been unnecessary, as Transatlantic would have been able to remind Allstate, that although Allstate now claims to have had no knowledge of Endorsement 5 prior to receiving a coy from Transatlantic on June 4, 2003, that

10

copy was provided in response to a request from Allstate specifically for Endorsement 5, thereby demonstrating prior knowledge.

**REPLY:** Allstate states that Paragraph 42 sets forth legal conclusions or arguments to which no reply is required and denies any allegation of Paragraph 42 to the extent it consists of a statement of fact.

43. Allstate also apparently failed to review or chose to ignore, its own files for such correspondence, and made its claim even though the copy of Endorsement 15 to the NESCO Policy attached to Allstate's own Complaint indicates on its face that Allstate was on notice regarding Endorsement 2 and Endorsement 5 by at least 1983

**REPLY:** Allstate states that Paragraph 43 sets forth legal conclusions or arguments to which no reply is required and denies any allegation of Paragraph 43 to the extent it consists of a statement of fact

44. Transatlantic would also have been able to remind Allstate that, regardless of whether Allstate contemporaneously received Endorsement 5 to the 1982 Certificate, Endorsement 2 separately precludes coverage for the asbestos claims at issue

**REPLY:** Allstate states that Paragraph 44 sets forth legal conclusions or arguments to which no reply is required and denies any allegation of Paragraph 44 to the extent it consists of a statement of fact.

### PREJUDICE TO TRANSATLANTIC

45. The late and/or inadequate notice with respect to the 1982 Certificate caused a delay of nearly three years, from September 2000 to August 2003, in Transatlantic establishing a claim file in respect of the period of the 1982 Certificate. This delay prejudiced Transatlantic, including with respect to its interests under reinsurance (known as "retrocessional protections") covering Transatlantic's obligations under the 1982 Certificate.

**REPLY:** Allstate denies that it provided late or inadequate notice with respect to the 1982 Certificate and further states that it has no knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 45.

46. Upon setting up the claim under the 1982 Certificate in August 2003, Transatlantic asserted late notice and the asbestos exclusions as a basis to deny coverage under the 1982 Certificate. As a result of Allstate's failure, over the next five years, to make any contention that asbestos exclusions were invalid, Transatlantic had no reason to believe that there was even any disputed liability under the 1982 Certificate, and Transatlantic was prejudiced with respect to (1)

11

protecting its interests under its retrocessional protections; and (2) taking steps to gather and preserve evidence regarding the asbestos exclusions.

**REPLY:** Allstate lacks knowledge or information sufficient to form a belief regarding the allegations of Transatlantic's conduct and actions with respect to the 1982 Certificate but denies the remaining allegations of Paragraph 46. Further replying, Allstate states that there were no billings under the 1982 Certificate until March 2008 and thus there was no actual dispute or controversy between the parties involving the 1982 Certificate until then.

47　Transatlantic's investigation concerning the prejudice suffered is still underway, but on information and belief, it is likely that the financial position of Transatlantic's reinsurers and/or its ability to collect from them has deteriorated over the period from September 2000 and/or over the period from August 2003. In addition, on information and belief, it is likely that certain evidence will be unavailable or more difficult to obtain.

**REPLY:** Allstate lacks knowledge or information sufficient to form a belief regarding the allegations of Paragraph 47.

48.　In addition, as a result of Allstate's failure to attempt to resolve this dispute in a manner consistent with the duty of utmost good faith, Transatlantic has been forced to incur costs and expenses with respect to what appears to be an unnecessary litigation in light of the effect of Endorsement 2, without regard to Endorsement 5, and in light of Allstate's own documents indicating that its allegations regarding Endorsement 5 are false.

**REPLY:** Paragraph 48 sets forth legal conclusions or argument to which no reply is required. To the extent Paragraph 48 alleges any facts, Allstate lacks knowledge or information sufficient to form a belief regarding said allegations. Allstate specifically denies that Endorsement 2 and/or Endorsement 5 exclude coverage for asbestos claims.

## ALLOCATION AND CLAIM HANDLING

49.　Transatlantic has paid the amounts billed under the 1981 Certificate in reasonable reliance upon the duty of utmost good faith and that Allstate had complied with its duties in handling, allocating and billing the claims. However, upon information and belief, Allstate overbilled Transatlantic, and Transatlantic has overpaid, under the 1981 Certificate.

**REPLY:** Allstate admits that Transatlantic has paid amounts billed under the 1981 Certificate but denies the remaining allegations of Paragraph 49.

12

50.    Upon information and belief, Allstate has allocated amounts to the 1981 Certificate (which lacks an asbestos exclusion) that should have been allocated to the 1982 Certificate (which contains two asbestos exclusions) or to other NESCO policies not reinsured by Transatlantic

**REPLY**: Allstate denies each and every allegation of Paragraph 50.

51.    Upon information and belief, Allstate made payments to the insured in 2001 totaling $7 million, which the settlement agreement that Allstate refers to as the Coverage In Place Agreement (the "Settlement Agreement") characterizes as the "Initial Payments," in respect of "Past Costs" incurred by the insured prior to January 1, 2001

**REPLY**: Allstate admits that it paid I.C. Industries $7 million as the Initial Payments under the Coverage In Place Agreement and refers to that document for the terms and conditions stated therein.

52.    Upon information and belief, Allstate failed to allocate even a single dollar of the Initial Payments to the 1982 Certificate, even though, upon information and belief, the 1982 period of the NESCO Policy, together with additional NESCO policy periods not reinsured by Transatlantic, were exposed for Past Costs no later than October 2000

**REPLY**: Allstate admits that, pursuant to the terms of the Coverage In Place Agreement, it did not allocate any amount of the Initial Payments to the 1982 Certificate and denies the remaining allegations of Paragraph 52.

53.    Allstate's most recent invoice and proofs of loss indicate that payments subsequent to the Initial Payment have also been allocated unevenly, at least as between the 1981 and 1982 policy periods, even though the Settlement Agreement indicates that both periods, and at least three other policy periods, were exposed for all subsequent payments, and that payments would be based on the number of exposed periods.

**REPLY**: Allstate denies the allegations of Paragraph 53 and otherwise refers to the Coverage In Place Agreement, proofs of loss and related documentation for the terms and conditions stated therein.

54.    Upon information and belief, Allstate has not complied with provisions in the Certificates governing the allocation of "loss" and "loss expenses."

**REPLY**: Allstate denies the allegations of Paragraph 54.

55.    Allstate's latest invoice and proofs of loss indicate that Allstate calculated the amount billed to Transatlantic under the 1982 Certificate for asbestos claims by including $726,928.40 in respect of an unrelated loss described as "Muffler caused car fire."

13

**REPLY:** The allegations of Paragraph 55 set forth legal conclusions or arguments to which no reply is required.

56. Upon information and belief, claims are not payable under the NESCO Policy, and therefore are not recoverable under the Certificates, unless and until underlying coverage, including the insured's self-insured retention ("SIR") has been fully exhausted.

**REPLY:** Paragraph 56 sets forth legal conclusions or arguments to which no reply is required

57. Allstate previously represented to Transatlantic that the $250,000 SIR underlying the NESCO Policy would protect the NESCO Policy from indemnity obligations to the extent the asbestos claims were less than $250,000, because the SIR had no aggregate limit and could only be exhausted on a per-occurrence basis:

> "A review of the Northbrook policies indicates the underlying coverage consists in part of a $750,000 policy in excess an underlying SIR of $250,000 per occurrence, with no aggregate. Thus it would appear that, in the absence of a duty to defend the policyholder, Northbrook's involvement in asbestos claims that do not exceed $250,000 may be minimal."

**REPLY:** Paragraph 57 sets forth legal conclusions or arguments to which no reply is required. To the extent Paragraph 57 purports to quote an alleged representative by Allstate, Allstate cannot identify the source of the purported representation and therefore lacks knowledge or information sufficient to form a belief regarding the remaining allegations of Paragraph 57.

58. As of its prior status report dated February 28, 2008, Allstate was reporting that the insured's average settlement payment per claimant was well below $250,000, at $679.85 or $2,159, depending upon who was responsible for the claim.

**REPLY:** Paragraph 58 refers to a status report dated February 28, 2008 to which Allstate refers for the terms and conditions stated therein

59. Upon information and belief, business-like claim handling would have included the advice of competent coverage counsel in resolving issues concerning exhaustion of the underlying coverage and SIR, allocation to the insured, and other coverage issues, as well as in negotiating or documenting the Settlement Agreement.

**REPLY:** Paragraph 59 sets forth legal conclusions or arguments to which no reply is required.

60.     Allstate's invoices and proofs of loss do not contain any indication that Allstate's billings exclude amounts paid in connection with resolving coverage issues or with the Settlement Agreement.

**REPLY**: Paragraph 60 sets forth legal conclusions or arguments to which no reply is required. Further replying, Allstate's invoices and proofs of loss do not seek reimbursement for any costs incurred with respect to coverage issues or in the negotiations which resulted in the Coverage In Place Agreement.

61.     Upon information and belief, Allstate has either (a) failed to retain coverage counsel as it should have, or (b) has included expenses for such counsel, which are not covered under the Certificates, in calculating its billings to Transatlantic.

**REPLY**: Allstate denies the allegations of Paragraph 61.

62.     Based on the foregoing, Allstate has breached its duties with respect to claims handling and/or allocation, and Transatlantic has been prejudiced as a result.

**REPLY**: Allstate denies the allegations of Paragraph 62

### FIRST COUNTERCLAIM
**(Declaratory Judgment – Asbestos Claims Under 1982 Certificate)**

63.     The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

**REPLY**: Allstate incorporates by reference as if set forth herein its reply to Paragraphs 1 through 62.

64.     As a result of the foregoing, an actual, ripe controversy of a justiciable nature exists between Transatlantic and Allstate concerning Transatlantic's obligations, if any, under the 1982 Certificate to indemnify Allstate for asbestos-related payments. The controversy is of sufficient immediacy as to justify the issuance of a declaratory judgment and by the terms and provisions of 28 U.S.C.A. § 2201, this court is vested with the power to declare the rights and liabilities of the parties and to give any further relief as may be necessary.

**REPLY**: Paragraph 64 sets forth legal conclusions or arguments to which no reply is required

65.     Upon information and belief, Allstate will continue to make payments under the NESCO Policy, and will continue to bill Transatlantic under the 1982 Certificate, until such time as it fully exhausts the reinsurance limits of $4,000,000.

**REPLY**: Allstate admits the allegations of Paragraph 65

15

66. To avoid the necessity of having to repeatedly relitigate Transatlantic's obligations to Allstate under the 1982 Certificate in connection with asbestos-related claims, Transatlantic respectfully requests the entry of a judgment declaring that Transatlantic is not obligated to reimburse Allstate under the 1982 Certificate for any asbestos related payments made by Allstate in connection with the Underlying Policy

**REPLY**: Paragraph 66 alleges entitlement to legal relief to which no reply is required but to the extent that Paragraph 66 sets forth any facts, Allstate hereby denies them.

## SECOND COUNTERCLAIM
### (Declaratory Judgment – Allocation Under Both Certificates)

67. The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

**REPLY**: Allstate incorporates by reference as if set forth herein its reply to Paragraphs 1 through 62.

68. As a result of the foregoing, an actual, ripe controversy of a justiciable nature exists between Transatlantic and Allstate concerning Allstate's obligations with respect to allocation of payments for purposes of the Certificates. The controversy is of sufficient immediacy as to justify the issuance of a declaratory judgment and by the terms and provisions of 28 U.S.C.A. § 2201, this court is vested with the power to declare the rights and liabilities of the parties and to give any further relief as may be necessary.

**REPLY**: Paragraph 68 sets forth legal conclusions or arguments to which no reply is required, except Allstate denies that 28 U.S.C.A. § 2201 applies to Transatlantic's request to have the Court declare "Allstate's obligations with respect to allocation of payments for purposes of the Certificates."

69. Upon information and belief, Allstate will continue to make payments under the NESCO Policy, and will continue to bill Transatlantic under the Certificates, until such time as it fully exhausts their respective reinsurance limits of $4,000,000.

**REPLY**: Allstate admits the allegations of Paragraph 69.

70. To avoid the necessity of having to repeatedly relitigate Allstate's allocation obligations under the Certificates, Transatlantic respectfully requests the entry of a judgment declaring that Allstate must allocate in accordance with the terms of the Certificates and in a good-faith, reasonable and consistent manner.

**REPLY**: Paragraph 70 alleges entitlement to legal relief to which no reply is required but to the extent that Paragraph 70 sets forth any facts, Allstate hereby denies them.

16

## THIRD COUNTERCLAIM
### (Breach of Contract – Recovery of Amounts Paid)

71. The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

**REPLY:** The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

72. Based upon the foregoing, Allstate has breached its duty to allocate losses and to invoice Transatlantic in compliance with Allstate's duty of utmost good faith, and/or after compliance with its duty to handle claims in a reasonable and business-like manner, including Allstate's duty to determine whether the policies underlying the NESCO Policy were properly exhausted.

**REPLY:** Allstate denies the allegations of Paragraph 72.

73. In reasonable reliance that Allstate acted in accordance with its duty of utmost good faith, Transatlantic has paid Allstate $683,728.83, has been damaged as a result of Allstate's conduct, and is entitled to monetary judgment, in the amount of all such sums that it would not have paid had Allstate fully complied with its duties.

**REPLY:** Allstate admits that Transatlantic has paid Allstate specific amounts under the 1981 Certificate but denies the remaining allegations of Paragraph 73.

## FOURTH COUNTERCLAIM
### (Breach of Contract – Litigation Costs)

74. The allegations contained in paragraphs 1 – 62 are realleged and incorporated by reference herein.

**REPLY:** The allegations contained in paragraphs 1 through 62 are realleged and incorporated by reference herein.

75. Based upon the foregoing, Allstate has breached its duty of utmost good faith and has thereby caused Transatlantic to incur costs and expenses in connection with this action. Transatlantic is entitled to a monetary judgment in the amount of such costs and expenses.

**REPLY:** Allstate denies the allegations of Paragraph 75.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Second Counterclaim fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Counterclaims are barred, in whole or in part, by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

The Counterclaims are barred, in whole or in part, by the doctrine of estoppel.

WHEREFORE, Allstate demands that judgment be entered in its favor and against Transatlantic dismissing the Counterclaims in their entirety together with an award of costs and disbursements. Allstate requests such other and further relief as this Court may deem proper.

Respectfully submitted,

ALLSTATE INSURANCE COMPANY

By: _____/s/ Neal R. Novak_____
One of its Attorneys

**NOVAK LAW OFFICES**
Neal R. Novak, Esq. (#06181620)
Reid J. Rozen, Esq. (#6199084)
Matthew R. Wildermuth (#06202106)
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
(312) 425-2500 Telephone
(312) 425-2525 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008, I electronically filed Allstate Insurance Company's Reply to Counterclaims and Affirmative Defenses with the Clerk of the Court using the ECF system, which will send notification of such filings to the following:

Hope G. Nightingale  
Litchfield Cavo  
303 West Madison, Suite 300  
Chicago, IL 60606  

Carey G. Child  
Stelio L. Tellis  
Chadbourne & Parke, LLP  
1200 New Hampshire Ave., N.W.  
Washington, D.C. 20036  

By: _____/s/ Neal R. Novak_____

**NOVAK LAW OFFICES**  
Neal R. Novak, Esq. (#06181620)  
Matthew R. Wildermuth (#06202106)  
Reid J. Rozen, Esq. (#6199084)  
33 N. LaSalle Street, Suite 1900  
Chicago, Illinois 60602  
(312) 425-2500 Telephone  
(312) 425-2525 Facsimile